**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| GRAND STRAND WATER & SEWER AUTHORITY, on behalf of itself and all others similarly situated, | ) Case No. 4:14-CV-2800-RMG<br>)<br>) |
| Plaintiff, | )<br>) **CLASS ACTION**<br>) |
| v. | )<br>) **COMPLAINT FOR** |
| OLTRIN SOLUTIONS, LLC; JCI JONES CHEMICALS, INC.; OLIN CORPORATION; and TRINITY MANUFACTURING, INC., | ) **VIOLATIONS OF THE**<br>) **FEDERAL ANTITRUST LAWS**<br>)<br>)<br>) |
| Defendants. | ) **DEMAND FOR JURY TRIAL**<br>)<br>) |

Plaintiff, on behalf of itself and a class of all others similarly situated (the "Class," as defined below), upon personal knowledge as to the facts pertaining to itself and upon information and belief as to all other matters, brings this class action for damages and other relief pursuant to the federal antitrust laws, and demands a trial by jury.

## INTRODUCTION

1.      This is a proposed class action against Defendants Oltrin Solutions, LLC, JCI Jones Chemicals, Inc., Olin Corporation, and Trinity Manufacturing, Inc., for violations of the federal antitrust laws in the bulk sodium hypochlorite ("bulk bleach") market. These entities are collectively referred to herein as "Defendants."

2.      This case arises from an agreement among Defendants which had the purpose and effect of allocating markets and territories and committing other anticompetitive practices designed to unlawfully limit competition in North Carolina and South Carolina in the bulk bleach market.

1

3.     Defendants were able to effectuate this conspiracy easily, as they were the two predominant entities that manufactured bulk bleach in North Carolina and South Carolina, Oltrin being the largest, followed by JCI as the next largest competitor.  Together, they had a dominant share of the market due to the difficulty and high costs of transporting bulk bleach.

4.     The United States Federal Trade Commission ("FTC") launched an investigation into possible anti-competitive behavior by Defendants in the bulk bleach market in North Carolina and South Carolina, resulting in the FTC's filing of an administrative complaint on January 18, 2013 against the Defendants.

5.     The FTC complaint alleged that in March 2010 defendant Oltrin Solutions, LLC ("Oltrin") and defendant JCI Jones Chemicals, Inc. ("JCI") entered into a market allocation agreement ("Agreement") in which Oltrin agreed to pay JCI $5.5 million over four years for, among other things, a list of JCI's bulk bleach customers for its Charlotte, North Carolina plant and JCI in turn agreed it would not sell bleach in North Carolina or South Carolina for six years. On March 7, 2013, the Defendants entered into a Consent Agreement prohibiting them from engaging in certain anticompetitive activities to restore competition lost as a result of the 2010 transaction.

6.     Due to the Defendants' conspiracy and actions to eliminate JCI as a competitor, prices for bulk bleach increased dramatically in 2010 and have remained at those supra-competitive levels.

7.     Defendants' conduct alleged herein has unlawfully and unreasonably restrained competition and led to artificially inflated prices for bulk bleach during the Class Period alleged herein.

2

8.      As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class (defined below) have paid artificially inflated prices for bulk bleach and thus suffered injury of the type the federal antitrust laws are designed to prevent.

9.      Plaintiff brings this action on behalf of itself and similarly situated direct purchasers of bulk bleach in North Carolina and South Carolina from one or more of the Defendants from March 2010 until the present (the "Class Period").

## JURISDICTION AND VENUE

10.     Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and recover treble damages and costs of suit, including attorneys' fees, against Defendants for the injuries that Plaintiff and members of the Class have suffered from Defendants' violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§1 and 2.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, because this action arises under the federal antitrust laws.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b), (c) and (d) and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, because, during the Class Period, Defendants resided, transacted business, were found, or had agents within this District, and a portion of the affected interstate trade and commerce discussed below was carried out in this District.  In addition, Plaintiff does business in this District relating to the events alleged.

13.     This Court has personal jurisdiction over each Defendant because each Defendant (a) transacted business throughout North Carolina and South Carolina, including in this District; (b) sold bulk bleach throughout North Carolina and South Carolina, including in this District; (c)

3

had substantial contacts with North Carolina and South Carolina, including in this District; or (d) committed one or more overt acts in furtherance of their illegal non-compete agreement that JCI not sell bulk bleach in North Carolina and South Carolina for at least six years and that JCI would provide its customer list to Oltrin.  In addition, the conspiracy alleged below was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business in North Carolina and South Carolina, including in this District.

## PARTIES

14.     Plaintiff Grand Strand Water & Sewer Authority ("GSWSA") provides water and sewer services in the non-municipal area east of the Intercoastal Waterway in Horry County, parts of Georgetown County, and rural areas west of the Waccamaw River in South Carolina. GSWSA purchased bulk bleach directly from one or more of the Defendants during the Class Period.

15.     Defendant Oltrin Solutions, LLC ("Oltrin") is a limited liability company organized under the laws of the State of Delaware with its headquarters located at 11 E.V. Hogan Drive, Hamlet, North Carolina, 28345.  Oltrin was formed in 2007 as a joint venture between TriOlin LLC, which is a subsidiary of Olin Corporation, and Trinity Manufacturing, Inc.  Oltrin purchases and resells all of the bleach produced for merchant sales at the Trinity-operated plant in Hamlet, North Carolina.

16.     Defendant JCI Jones Chemicals, Inc. ("JCI") is a corporation organized under the laws of the State of New York with its headquarters located at 1765 Ringling Boulevard, Sarasota, Florida, 34236.  Prior to entering into a non-competition agreement with Oltrin, JCI manufactured and sold bulk bleach from its plant in Charlotte, North Carolina.

4

17.     Defendant Olin Corporation ("Olin") is a corporation organized under the laws of Virginia with its headquarters located at 190 Carondelet Plaza, Suite 1530, Clayton, Missouri, 63105.  Olin manufactures and sells sodium hypochlorite in the United States, but it does not have any plants in North Carolina or South Carolina.  In 2007, Olin created a subsidiary, TriOlin, LLC, which, together with Trinity Manufacturing, Inc., formed Oltrin as a joint venture.

18.     Defendant Trinity Manufacturing, Inc. ("Trinity") is a corporation organized under the laws of the State of Delaware with its headquarters located at 11 E.V. Hogan Drive, Hamlet, North Carolina, 28345.  Trinity produces bulk bleach at a plant in Hamlet.  All bleach produced for merchant sale at Trinity's plant in Hamlet, North Carolina is purchased and resold through Oltrin.

19.     The following diagram depicts the relationships among Defendants and TriOlin, LLC.



## AGENTS AND CO-CONSPIRATORS

20.    The acts of Defendants alleged in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

21.    Various persons or firms not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

## INTERSTATE TRADE AND COMMERCE

22.    Defendants' conduct, as described in this Complaint, was within the flow of, was intended to, and did have a substantial effect on the interstate commerce of North Carolina and South Carolina, including in this District.

23.    Defendants Trinity and JCI Jones are the two largest manufacturers and marketers of bulk bleach in North Carolina and South Carolina.  The anticompetitive conduct alleged herein had a direct, substantial, and reasonably foreseeable effect on interstate commerce in that Defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the bulk bleach market in North Carolina and South Carolina.

## RELEVANT MARKETS

24.    The relevant product market for purposes of this Complaint is the market for the sale of bulk bleach, meaning sodium hypochlorite in a concentration of at least 10 percent.

25.    The relevant geographic market for purposes of this Complaint is North Carolina and South Carolina.

## FACTUAL ALLEGATIONS

### Bulk Bleach

26.     Bulk bleach refers to bleach, or sodium hypochlorite (*NaClO*). Sodium hypochlorite is typically sold in bulk by the gallon or ton in concentrations of at least 10 percent.

27.     Sodium hypochlorite can be manufactured on an industrial scale in one of two ways. The first involves the electrolysis of saltwater that creates chlorine and caustic, which is then used to create the bleach. The second method uses something called the Hooker Process, which involves passing chlorine through a cold solution of sodium hydroxide. If the chlorine used in this process is manufactured outside the facility where the sodium hypochlorite is produced, the facility must have safety measures in place to prevent chlorine leaks because chlorine is an extremely volatile substance.

28.     Bulk bleach is used on a large scale and has important commercial, industrial and municipal applications including water purification, surface purification, bleaching, odor removal and waste water disinfection. Typical industries that use bulk bleach include: agriculture, chemical, food, glass, paper, pharmaceutical, synthetics, textile, water treatment and waste disposal.

29.     Pure sodium hypochlorite is highly reactive and unstable. Therefore it is usually diluted with water before being distributed. The typical concentrations for bulk bleach are 12.5% solution, used for water chlorination, and 15% solution, used for waste water treatment. In contrast, household bleach is typically sold in concentrations of 3% to 6% solution.

30.     Storing and transporting bulk bleach is quite costly and difficult, so it is economically efficient for a manufacturer to have a plant located near its customers. Bleach begins to evaporate or degrade over time, especially in warm weather or when it comes in

7

contact with acids, sunlight, certain metals, and poisonous and corrosive gases, including chlorine gas. Sodium hypochlorite is a strong oxidator and reacts with flammable compounds, therefore freight costs for the shipment of bulk bleach are quite high due to the dangerous nature of the product. For these reasons, it is important to ship the completed bleach solution to customers within a narrow geographic region as quickly as possible.

31.    There are products that could be used in some circumstances by certain end-users for somewhat similar purposes as bulk bleach, such as elemental chlorine or calcium hypochlorite. There are many reasons why these products are not suitable substitutes for bulk bleach. For example, these products may present greater safety hazards during production and storage. Customers are also unlikely to switch to other products once they have installed the infrastructure to handle, store and use bulk bleach.

**Market Characteristics Conducive to Collusion**

**Limited Number of Producers**

32.    The bulk bleach industry in North Carolina and South Carolina is extremely concentrated. As of 2006, the ICIS, a petrochemical market information provider, identified only two industrial processors of bulk bleach in North Carolina and South Carolina: defendant JCI with a plant in Charlotte, NC; and defendant Trinity, with a plant in Hamlet, NC. According to the FTC complaint, there has been no entry of competitors in North Carolina and South Carolina since the March 2010 agreement between Oltrin and JCI.

33.    In North Carolina and South Carolina alone, sales of bulk bleach are believed to be at least $30 million per year. Municipalities purchase bulk bleach for water purification and wastewater treatment. Private commercial and industrial companies, such as those in the meat

and poultry processing, paper and energy industries, also purchase and use significant quantities of bulk bleach.

## Price Inelasticity

34.    If a given change in price triggers a smaller proportionate change in the quantity demanded, then the demand for the good or service is said to be inelastic.

35.    Demand for bulk bleach in North Carolina and South Carolina is inelastic because there is no suitable substitute for bulk bleach.  For example, during the time period of the conspiracy alleged herein, city, water and sewerage municipalities in North Carolina and South Carolina sought more bulk bleach to purchase and did not switch to other products despite having to pay supra-competitive prices for bulk bleach.  Publicly available information from those entities has established that the need for bulk bleach, particularly in the areas of water purification and wastewater treatment, has either remained the same or has increased during the Class Period.  For example, the city of Columbia, South Carolina, sought bids in 2012 for 332,000 gallons of bulk bleach.  By the following year, Columbia's bulk bleach needs had grown to 588,800 gallons.  In 2011, the Fayetteville Public Works Commission in North Carolina awarded a one year contract to defendant Oltrin for 3,000 tons of bulk bleach.  In 2013, Fayetteville PWC required 4,000 tons of bulk bleach for one year, an increase of 33% in two years.

## Product Homogeneity

36.    The product of any one producer of bulk bleach is functionally interchangeable with another's.  The bulk bleach produced by Trinity and sold through Oltrin does not differ significantly in quality, appearance or use from that produced by JCI.  Bulk bleach is produced and sold in standard concentrations.  It is commonly known as a commodity product.

**High Barriers to Entry**

37.     Entry into the bulk bleach market involves significant investments in time and start-up capital.  It takes three or more years and tens of millions of dollars to build a modern salt-to-bleach plant.  Entry by building a plant or modifying an existing plant to produce bleach by combining electrochemical units is also difficult because that process requires the producer to handle chlorine, which is governed by strict security regulations.

38.     On information and belief, no additional bulk bleach manufacturers have entered into North Carolina or South Carolina since March of 2010, which contributed to Defendants' ability to control the sale of bulk bleach in North Carolina and South Carolina.

**The Illegal Market Allocation Agreement**

39.     Prior to March of 2010, both Oltrin and JCI were most important players in the bulk bleach market in North Carolina and South Carolina.  They directly competed with one another for customers.  In particular, obtaining municipal contracts in these states are important and lucrative sources of business, as municipalities need thousands to hundreds of thousands of gallons or tons of bulk bleach annually for water purification and wastewater treatment.

40.     On March 18, 2010, Oltrin and JCI entered into a market allocation Agreement that provided for three things:

a.     JCI would provide Oltrin with a complete list of its bulk bleach customers serviced by its Charlotte, North Carolina plant;

b.     JCI would not re-enter the North Carolina or South Carolina bulk bleach market for a period of six years; and

c.     Oltrin would pay JCI $5.5 million.

10

41.    This Agreement comprises several inter-related agreements: an Asset Purchase Agreement dated March 18, 2010; a Noncompetition, Nondisclosure, and Nonsolicitation Agreement dated March 26, 2010; an Oltrin Bleach Purchasing Agreement dated March 26, 2010; and a JCI Bleach Purchasing Agreement dated March 26, 2010.

42.    The Agreement covered North Carolina and South Carolina and specifically included a non-compete agreement barring JCI from selling bulk bleach in there, thereby eliminating actual, direct competition between the two largest competitors in the relevant market.

43.    Prior to the Agreement, JCI and Oltrin held the majority of the municipal contracts for bulk bleach in North Carolina and South Carolina.  Additionally, both Trinity and JCI sold bulk bleach to distributors and other commercial and industrial customers in the North Carolina and South Carolina.

### Oltrin's Expanded Market Power and Price Increases

44.    The result of the Agreement was the effective elimination of JCI from the bulk bleach market in North Carolina and South Carolina.  Oltrin no longer had to compete with JCI for customer contracts.  In fact, because it received a list of JCI's customers as part of the Agreement, Oltrin was able to target those customers directly to obtain their business.

45.    By eliminating JCI as a direct competitor through the Agreement, Oltrin substantially increased the market concentration for bulk bleach sales, thereby increasing its ability to raise bulk bleach prices.

46.    Even prior to the Agreement, there were few choices for bulk bleach suppliers in North Carolina and South Carolina outside of JCI and Trinity.  The company Univar manufactured bulk bleach at a plant in Suffolk, Virginia, before it was shut down shortly after the conspiracy began.  Even while its Suffolk plant was operational, due to the difficulties in and

high costs of shipping bulk bleach over significant distances, Univar was mainly a distributor of locally-sourced bulk bleach in North Carolina and South Carolina (*i.e.*, reselling bulk bleach manufactured by Trinity or JCI).  The company Bleach-Tech LLC also operates a plant in Petersburg, Virginia, and does not serve any significant amount of customers in North Carolina and South Carolina due to the same difficulties and high costs.

47.     After eliminating JCI as a result of the Agreement, Trinity was the largest manufacturer of bulk bleach in the Carolinas.  This made Trinity, and therefore Oltrin, the predominant source of bulk bleach there.

48.     With its market power, Oltrin was able to increase the price of bulk bleach in North Carolina and South Carolina during the Class Period for its municipal and private customers.  Concerning the effect of pricing for municipal customers, a sampling of publicly available bid information of municipalities that purchased bulk bleach in North Carolina and South Carolina shows bulk bleach prices increased between 20%-25% since Defendants entered into the Agreement in 2010.

49.     For example, meeting minutes of the Metropolitan Sewerage District of Buncombe County, North Carolina ("Buncombe"), identify the bid prices for bulk bleach before and throughout the Class Period.  In 2008 and 2009, defendant JCI offered the most competitive price at $0.687 per gallon.  During the years when the Agreement was in effect, Buncombe paid $0.84 per gallon each year despite attempting to engage in competitive bidding to meet its bulk bleach needs.

**FTC Settlement Agreement**

50.     Defendants entered into a Consent Agreement with the FTC on March 7, 2013 after the FTC investigated the facts surrounding the Agreement and found a sufficient basis to file a complaint.

51.     The Consent Agreement required that Oltrin release JCI from all provisions of the Agreement that prevent JCI from competing in the bulk bleach market.  Oltrin must also assign JCI bleach contracts totaling at least one million gallons of bulk bleach annually and allow JCI to provide the product for the remainder of the contract.

52.     Furthermore, Oltrin and JCI must jointly notify all of Oltrin's customers that JCI will be supplying bulk bleach in North Carolina and South Carolina and request that JCI be added to future solicitations of bids.  Additionally, Oltrin must forward JCI a copy of all solicitations for bids for bulk bleach in North Carolina and South Carolina for the next three years.

53.     The Consent Agreement also expressly requires JCI to start producing bulk bleach at its Charlotte, North Carolina plant for the purpose of supplying customers in the North Carolina and South Carolina area.

54.     Defendants Olin and Trinity are equally responsible for ensuring that Oltrin complies with the above requirements of the Consent Agreement.

55.     To ensure that Defendants comply with the FTC's order, the Consent Agreement provides that the FTC may appoint a monitor to ensure that Oltrin complies with the requirements of the Consent Agreement and that a trustee may be appointed to fulfill the obligations of the Order on behalf of Oltrin if they have not complied within the time limits set out in the Order.

56.    The FTC states that the purpose of the Consent Agreement is "to enable JCI to compete in the manufacture and sale of Bleach to commercial, industrial and governmental Customers in North Carolina and South Carolina" as well as "to remedy in a timely and sufficient manner the lessening of competition resulting from the Transaction as alleged in the Commission's Complaint."

## FRAUDULENT CONCEALMENT

57.    On or about March 31, 2010, Plaintiff received a letter from JCI dated March 29, 2010 informing it that the Charlotte, North Carolina facility of JCI would no longer be supplying Plaintiff with bulk bleach.  While the "Charlotte JCI facility will most definitely remain in operation" and would continue to be a major supplier of "Sodium Hypochlorite in less than 2,000 gallon deliveries," JCI had agreed to "sell the assets of its bulk Sodium Hypochlorite business to Oltrin."  JCI sought Plaintiff's consent to assign the existing bleach supply contract to Oltrin, who had agreed to service Plaintiff's account.  JCI encouraged Plaintiff to transition to Oltrin by stating that "Oltrin is a major producer of Sodium Hypochlorite in its purest form" and was committed to ensuring there would be no disruption of service or supply.

58.    The March 29, 2010 letter from JCI did not inform Plaintiff of the material terms the Agreement between JCI and Oltrin outlined in the FTC Complaint, namely that JCI had agreed to not to re-enter the bulk bleach market in North Carolina or South Carolina for six years and was paid $5.5 million over four years for, among other things, a list of JCI's bulk bleach customers.

59.    Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the agreement alleged herein, until the FTC's announcement on January 18, 2013 that it would require Oltrin to release

its competitor, JCI, from a 2010 agreement not to sell bleach in North Carolina and South Carolina.

60.     Plaintiff could not have determined the nature of, scope of, or full participants in, the alleged agreement prior to the FTC's announcement, which included a Complaint, redacted public version of its Decision and Order, Agreement Containing Consent Order, and Analysis of Agreement Containing Consent Order to Aid Public Comment.

61.     Because Defendants' Agreement was kept secret until January 18, 2013, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time that they were paying supra-competitive prices for bulk bleach during the Class Period.

62.     The affirmative acts of Defendants alleged herein, including acts in furtherance of the Agreement, were wrongfully concealed and carried out in a manner that precluded detection. Those concealed acts included the scheduled payments of the overall $5.5 million over four years from Oltrin to JCI.

63.     Defendants' conspiracy was inherently self-concealing.  Bulk bleach is not exempt from antitrust regulation, and thus, before January 18, 2013, Plaintiff reasonably considered it to be a well-regulated, competitive industry.

64.     In the context of the circumstances surrounding Defendants' Agreement, in particular the undisclosed reason for the withdrawal of JCI as a competitor in the manufacturing and sale of bulk bleach, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' conduct was conspiratorial.  Accordingly, a reasonable person under the circumstances would not have been altered to investigate the legitimacy of the proffered bulk bleach prices before January 18, 2013.

15

65.    None of the facts or information available to Plaintiff and members of the Class prior to January 18, 2013, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to that date.

66.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until on or about January 18, 2013, when the FTC complaint, and its corresponding factual allegations of anti-competitive conduct concerning bulk bleach in the Carolinas, was first publicly disseminated.

67.    As a result of Defendants' fraudulent concealment, all applicable statutes of limitations affecting Plaintiff's and the claims of the Class have been tolled.

## VIOLATION OF THE ANTITRUST LAWS

68.    Beginning in March of 2010, Defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to allocate the market and artificially raise, fix, maintain or stabilize the prices of bulk bleach in North Carolina and South Carolina.

69.    Defendants engaged in anticompetitive activities, the purpose and effect of which were to allocate the market and artificially raise, fix, maintain or stabilize the prices of bulk bleach in North Carolina and South Carolina.

70.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in this Complaint.

71.    Throughout the Class Period, Plaintiff and the other class members purchase bulk bleach from Defendants at supra-competitive prices.

16

72.     Defendants' contract, combination or conspiracy constitutes an unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## ANTI-COMPETITIVE EFFECTS

73.     As a result of Defendants' unlawful conduct, Plaintiff and the other Class members have been injured because they have paid more for bulk bleach than they would have paid absent the Agreement.

74.     Defendants' unlawful contract, combination or conspiracy has had at least the following effects:

         a.      price competition in the market for bulk bleach in North Carolina and South Carolina has been artificially restrained;

         b.      prices for bulk bleach sold by defendant Oltrin have been raised, fixed, maintained or stabilized at supra-competitive levels; and

         c.      purchasers of bulk bleach have been deprived of the benefit of free and open competition in the market for bulk bleach in North Carolina and South Carolina.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and on behalf of all others similarly situated.  The "Class" is defined as:

> All persons, corporations, and other legal entities located in North Carolina or South Carolina that purchased sodium hypochlorite in concentrations of no less than 10% directly from one or more of the defendants and/or their co-conspirators, subsidiaries, affiliates or joint venturers from March 19, 2010 until the present.  Excluded from the Class are Defendants, any parent, subsidiary, affiliate, agent or employee of any defendant, and any co-conspirators.

17

76.     The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout North Carolina and South Carolina.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that their identities can only be discovered through inspection of Defendants' records, which are or should be readily available.

77.     Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein.  Plaintiff and the Class purchased bulk bleach at non-competitive prices established by the actions of Defendants in connection with the wrongful conduct alleged herein.

78.     Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are not antagonistic to those of the Class.  Additionally, Plaintiff is represented by counsel who is experienced and competent in the prosecution of complex class action antitrust litigation.

79.     Questions of law and fact common to the Class predominate over questions affecting individual Class members, if any, in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

a.      Whether defendants Oltrin and JCI conspired or otherwise entered into an agreement with the purpose and effect of allocating markets in order to unlawfully raise or stabilize the price of bulk bleach and restrain trade or commerce;

b.      Whether Defendants' conduct violated Section 1 of the Sherman Act;

c.      Whether Defendants' conduct violated Section 2 of the Sherman Act;

   d. The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

   e. The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages; and

   f. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

  80. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would result in.  Class treatment will also permit the adjudication of relatively small claims by certain Class members who could not afford to individually litigate an antitrust claim against large corporate defendants.

  81. Plaintiff is not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**FIRST CLAIM FOR RELIEF**

**Unlawful Agreement in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**
**<u>Against All Defendants</u>**

  82. Plaintiff incorporates and re-alleges each allegation set forth in paragraphs 1 through 79 of this Complaint.

  83. Beginning on at least March 18, 2010 and continuing thereafter, Defendants, by and through their officers, directors, employees, agents, or other representatives, were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

19

84.    Defendants entered into a continuing agreement, understanding and conspiracy in restraint of trade to allocate the market for bulk bleach in order to fix, raise, maintain or stabilize the price of bulk bleach.

85.    The Agreement provided that JCI would no longer produce or sell bulk bleach in North Carolina or South Carolina for six years and required JCI to give Oltrin a list of its customers in those states.  This contract removed a major competitor from the market and gave Oltrin the opportunity to raise the price of bulk bleach without the threat of a competitor offering a lower price.

86.    Plaintiff and the other Class members have been injured in their business and property by reason of Defendants' unlawful combinations, contract, conspiracy and agreement. This injury is of the type the federal antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

87.    Accordingly, Plaintiff and Class members seek damages, to be trebled pursuant to federal antitrust law, and costs of this suit, including reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**

**Unlawful Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Against Defendants Trinity, Olin and Oltrin**

88.    Plaintiff incorporates and re-alleges each allegation set forth in paragraphs 1 through 79 of this Complaint.

89.    As a result of the March 18, 2010 Agreement, Oltrin, which was a joint venture between Trinity and Olin, gained monopoly power in the relevant market.

90.    Even prior to the Agreement, Trinity was one of the largest producers of bulk bleach in the Carolinas.  The Agreement eliminated a major competitor, thereby increasing Trinity and Oltrin's market power and ability to control prices and exclude other competitors.

91.     Trinity and Olin, through Oltrin, abused that monopoly power to maintain and enhance their market dominance by unreasonably restraining trade, leading to artificially inflated prices.

92.     Defendants' conduct constitutes unlawful monopolization and unlawful competitive conduct in the relevant markets in violation of Section 2 of the Sherman Act.

93.     Plaintiffs and other Class members have been injured in their business and property as a result of Defendants' conduct.  This injury is of the type the federal antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

94.     Accordingly, Plaintiff and Class members seek damages, to be trebled pursuant to federal antitrust law, and costs of this suit, including reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

### Attempt to Monopolize in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 Against Defendants Trinity, Olin and Oltrin

### (Pled in the Alternative to Count Two)

95.     Plaintiff incorporates and re-alleges each allegation set forth paragraphs 1 through 79 of this Complaint.

96.     Defendants acted with the specific intent to monopolize the relevant market.

97.     The Agreement explicitly excluded JCI from producing or selling bulk bleach in North Carolina or South Carolina for six years, leaving Oltrin, which was a joint venture between Trinity and Olin through its subsidiary, to monopolize the market.

98.     There was a dangerous possibility that Oltrin would succeed in its attempt to monopolize the relevant market because the Agreement left Oltrin in control of a large percentage of the market and without the need to price bids and contracts competitively due to the lack of other players in the market.

99.     Plaintiffs and other Class members have been injured in their business and property as a result of Defendants' conduct.  This injury is of the type the federal antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

100.    Accordingly, Plaintiff and Class members seek damages, to be trebled pursuant to federal antitrust law, and costs of this suit, including reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**Conspiracy to Monopolize in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Against All Defendants**

101.    Plaintiff incorporates and re-alleges each allegation set forth in paragraphs 1 through 79 of this Complaint.

102.    Defendants entered into the Agreement with the specific intent to give Oltrin a monopoly position in the relevant market.  In furtherance of the Agreement, JCI did in fact exit the market and accept $5.5 million from Oltrin for doing so.

103.    Plaintiffs and other Class members have been injured in their business and property as a result of Defendants' conduct.  This injury is of the type the federal antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

104.    Accordingly, Plaintiff and Class members seek damages, to be trebled pursuant to federal antitrust law, and costs of this suit, including reasonable attorneys' fees.

**DEMAND FOR JURY TRIAL**

105.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

**PRAYER FOR RELIEF**

106.    Wherefore, Plaintiff demands judgment against Defendants as follows:

a.      Declaring this action to be a proper class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

b.      That the contract, combination, or conspiracy, and the acts done in furtherance thereof by Defendants be adjudged to have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2;

c.      That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the conspiracy or agreement alleged herein;

d.      That judgment be entered for Plaintiff and the Class members against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law;

e.      That Plaintiff and the Class recover pre-judgment and post-judgment interest as permitted by law;

f.      That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law; and

g.      For such other and further relief as is just and proper under the circumstances.

[Signatures on Following Page]

Dated: July 11, 2014                    Respectfully submitted,

                                        **MCNAIR LAW FIRM, P.A.**


                                        _____s/Henrietta U. Golding_____
                                        Henrietta U. Golding, Fed ID #2125
                                        2411 N. Oak Street, Suite 206
                                        Myrtle Beach, SC 29577
                                        Tel: (843) 444-1107
                                        Fax: (843) 444-4729
                                        Email:  hgolding@mcnair.net

                                        Solomon B. Cera (*Pro Hac Vice* forthcoming)
                                        Pamela A. Markert (*Pro Hac Vice* forthcoming)
                                        GOLD BENNETT CERA & SIDENER LLP
                                        595 Market Street, Suite 2300
                                        San Francisco, CA 94105
                                        Tel: (415) 777-2300
                                        Fax: (415) 777-5189
                                        Email:  scera@gbcslaw.com
                                                pmarkert@gbcslaw.com


                                        Brent W. Johnson (*Pro Hac Vice* forthcoming)
                                        Emmy L. Levens (*Pro Hac Vice* forthcoming)
                                        COHEN MILSTEIN SELLERS & TOLL, PLLC
                                        1100 New York Ave., N.W.
                                        Suite 500, East Tower
                                        Washington, DC  20005
                                        Tel.: (202) 408-4600
                                        Email:  bjohnson@cohenmilstein.com
                                                elevens@cohenmilstein.com

                                        Manual John Dominguez (*Pro Hac Vice* forthcoming)
                                        COHEN MILLSTEIN SELLERS & TOLL PLLC
                                        2925 PGA Boulevard, Suite 200
                                        Palm Beach Gardens, FL 33410
                                        Tel: (561) 833-6575
                                        Fax: (561) 515-1401
                                        Email:  jdominguez@cohenmilstein.com


                                        Daniel E. Gustafson (*Pro Hac Vice* forthcoming)
                                        Daniel C. Hedlund (*Pro Hac Vice* forthcoming)
                                        GUSTAFSON GLUEK PLLC
                                        Canadian Pacific Plaza

24

120 South Sixth Street, Suite 2600
Minneapolis, Minnesota  55402
Tel: (612) 333-8844
Email:  dgustafson@gustafsongluek.com
          dhedlund@gustafsongluek.com

*Attorneys for Plaintiff Grand Strand Water & Sewer
Authority*