# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| GRAND STRAND WATER & SEWER AUTHORITY, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>OLTRIN SOLUTIONS, LLC, JCI JONES CHEMICALS, INC., and TRINITY MANUFACTURING, INC.,<br><br>    Defendants. | Case No. 4:14-CV-2800-RMG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND AUTHORIZATION TO DISSEMINATE NOTICE**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

      A.    Procedural History ................................................................................ 2

      B.    The Settlement Agreement .................................................................... 3

III.  ARGUMENT ...................................................................................................... 4

      A.    The Proposed Settlement Falls Within the Range of Possible Approval as
            Fair, Reasonable, and Adequate............................................................. 4

            1.    The Proposed Settlement is Fair. .............................................. 5

            2.    The Proposed Settlement is Reasonable and Adequate. ........... 7

      B.    The Court Should Conditionally Certify the Settlement Class. ............ 8

            1.    The Requirements of Rule 23(a) Are Satisfied.......................... 9

            2.    The Requirements of Rule 23(b)(3) Are Satisfied. ................. 14

      C.    Plaintiff's Proposed Class Notice Plan is Reasonable. ....................... 16

IV.   CONCLUSION.................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................9, 13, 14, 16

*Anselmo v. West Paces Hotel Group, LLC*,
No. 9:09-cv-2466-DCN, 2012 U.S. Dist. LEXIS 164618 (D.S.C. Nov. 19,
2012) ................................................................................................................5

*Armstrong v. Board of School Directors*,
616 F.2d 305 (7th Cir. 1980) ................................................................................4

*Ashley v. GAF Materials Corp. (In re Bldg. Materials Corp. of America Asphalt
Roofing Shingle Prod. Liab. Litig.)*,
MDL No. 8:11-mn-2000-JMC, 2014 U.S. Dist. LEXIS 183679 (D.S.C. Oct.
15, 2014) .......................................................................................................17

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) .................................................................12, 14, 15

*Broussard v. Meinecke Disc. Muffler Shops*,
155 F.3d 331 (4th Cir. 1998) ..............................................................................12

*Case v. Plantation Title Co.*,
No. 9:12-CV-2518-DCN-BM, 2015 U.S. Dist. LEXIS 33580 (D.S.C. Mar. 5,
2015) ................................................................................................................4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................8

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993) ................................................................................4

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................7

*Clark v. Experian Info. Solutions, Inc.*,
No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004) ...............................5

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967) ................................................................................10

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) .................................................................11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).................................................................16, 17

*Faile v. Lancaster County*,
   No. 0:10-cv-2809-CMC, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8,
   2012) .................................................................6

*In re First Databank Antitrust Litig.*,
   205 F.R.D. 408 (D.D.C. 2002).................................................................8

*Fischer v. Virginia Elec. & Power Co.*,
   217 F.R.D. 201 (E.D. Va. 2003) .................................................................10, 12

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) .................................................................7

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).................................................................4

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) .................................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................17

*Hewlett v. Premier Salons Int'l, Inc.*,
   185 F.R.D. 211 (D. Md. 1997).................................................................11

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994).................................................................5, 7

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................8

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .................................................................4

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .................................................................5, 7

*In re Kirschner Med. Corp. Sec. Litig*,
   139 F.R.D. 74 (D. Md. 1991) .................................................................10, 14, 15

*Kirven v. Cent. States Health & Life Co.*,
   No. 3:11-2149-MBS, 2015 U.S. Dist. LEXIS 36393 (D.S.C. Mar. 23, 2015) .................................................................7

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    No.1:08-cv-1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ............................................6

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ...................................................................................................4

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) ...............................................................................................8

*Meredith v. Mid-Atlantic Coca-Cola Bottling Co., Inc.*,
    129 F.R.D. 130 (E.D. Va. 1989) ............................................................................................12

*In re Microstrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) .....................................................................................16

*Morris v. Wachovia Sec., Inc.*,
    223 F.R.D. 284 (E.D. Va. 2004) ..............................................................................................9

*Olvera-Morales v. Int'l Labor Mgmt. Corp.*,
    246 F.R.D. 250 (M.D.N.C. 2007) ..........................................................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ..............................................................................................................17

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .....................................................................................................4

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) .....................................................................................................4

*Peoples v. Wendover Funding, Inc.*,
    179 F.R.D. 492 (D. Md. 1998) ...............................................................................................10

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ......................................................................................15

*Poole Foundry & Machine Co. v. NLRB*,
    192 F.2d 740 (4th Cir. 1951) ...................................................................................................4

*In re Red Hat, Inc. Sec. Litig.*,
    No. 5:04-CV-473-BR, 2010 U.S. Dist. LEXIS 68619 (E.D.N.C. June 11,
    2010) ...................................................................................................................................6, 7

*In re Remeron End-Payor Antitrust Litig.*,
    Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005) ....................8

*In re Se. Hotel Props. Ltd. P'ship Investor Litig.*,
    151 F.R.D. 597 (W.D.N.C. 1993) .....................................................................................12, 13

*South Carolina Nat'l Bank v. Stone,*
    139 F.R.D. 325 (D.S.C. 1991) ..................................................................12

*South Carolina Nat'l Bank v. Stone,*
    139 F.R.D. 335 (D.S.C. 1991) ....................................................................5

*South Carolina Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990) ................................................................4

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) ........................................................................7

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,*
    No. 3:08-cv-271-JFA, 2012 U.S. Dist. LEXIS 131201 (D.S.C. 2012) ...................9

*Thorn v. Jefferson-Pilot Life Ins. Co.,*
    445 F.3d 311 (4th Cir. 2006) ....................................................................10

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ........................................................................8

*Williams v. First Nat'l Bank of Pauls Valley,*
    216 U.S. 582 (1910) ..................................................................................4

## STATUTES

15 U.S.C. § 2 ....................................................................................2, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...........................................................................*passim*

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2005) ..............4

*Manual for Complex Litigation* (4th ed. 2004) ..........................................17

## I.    INTRODUCTION

After more than eighteen months of investigation and discovery in this matter, Plaintiff Grand Strand Water & Sewer Authority ("Plaintiff") and Defendants Oltrin Solutions, LLC ("Oltrin"), JCI Jones Chemicals, Inc. ("JCI"), and Trinity Manufacturing, Inc. ("Trinity") (collectively, "Defendants") have reached a preliminary Settlement, which, if approved by the Court, will provide $2.2 million in cash for the benefit of the Settlement Class.[1]  The Settlement resulted from good faith, arm's-length negotiations between highly-experienced counsel and constitutes an outstanding result for the Class.  Indeed, according to Plaintiff's calculations, the Settlement satisfies nearly all of the Class's estimated single damages. The Settlement protects the Class's interests by providing certain and nearly complete relief now and avoiding the risks inherent in ongoing litigation.  The Settlement easily satisfies Rule 23's fair, reasonable, and adequate standard and constitutes an excellent result by any measure.

For these reasons, discussed more fully below, Plaintiff respectfully submits this Memorandum in support of its unopposed motion for the entry of an order: (i) granting preliminary approval to the proposed Settlement set forth in the Settlement Agreement (attached here as Exhibit A) entered into by Plaintiff on its own behalf and on behalf of the proposed Settlement Class; (ii) certifying the proposed Settlement Class and Plaintiff as Class Representative, and appointing Solomon B. Cera of Cera LLP and Brent W. Johnson of Cohen Milstein Sellers & Toll PLLC as Class Counsel; (iii) approving the form and manner of giving notice of the proposed Settlement to the Class (Notice attached here as Exhibit B); and (iv) setting a hearing date for final approval thereof (the "Fairness Hearing").

---

[1] The Settlement Class includes all persons that purchased Bulk Bleach in North Carolina or South Carolina directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures, from March 19, 2010 through March 31, 2013 and is referred to herein as the "Settlement Class" or "Class."

## II.    BACKGROUND

### A.    Procedural History

Plaintiff brought this action in July 2014 alleging that Defendants Oltrin and JCI unlawfully agreed to allocate the market for bulk bleach in the Carolinas to Oltrin in violation of Section 1 of the Sherman Act. ECF No. 1 ("Complaint"). Plaintiff further alleged that Defendants Trinity and Oltrin unlawfully monopolized, attempted to monopolize, and conspired to monopolize the bulk bleach market in the Carolinas in violation of Section 2 of the Sherman Act, 15 U.S.C. §2. *Id.* ¶¶ 68-72, 82-104.

The Court denied Defendants Trinity, Oltrin and JCI's motions to dismiss in their entirety on March 30, 2015, ECF No. 79, and the Parties commenced discovery.[2] Plaintiff propounded two sets of requests for production (forty-five individual requests for production) and one set of interrogatories on each Defendant. In response, Defendants produced and Plaintiff received over 120,000 documents, encompassing in excess of 358,000 pages, including a substantial portion of the documents produced to the Federal Trade Commission ("FTC") (including transcripts of several key depositions taken by the FTC).  Plaintiff also filed a Freedom of Information Act request seeking records from the FTC. Defendants propounded more than 160 document requests to Plaintiff and 36 interrogatories with numerous subparts. Plaintiffs produced 4,670 documents, in excess of 53,000 pages, in response.

During the later phase of this considerable discovery, the Parties engaged in settlement negotiations that lasted for several weeks. Only after Defendants completed their document productions, Plaintiff substantially completed its review of those documents using advanced search queries, and Plaintiff completed its own document productions did the Parties engage in

---

[2] The Court granted Olin's motion to dismiss Plaintiff's complaint as pled without prejudice. ECF No. 79.

settlement negotiations. After reaching an agreement in principle, and at the Parties' request to conserve resources, on October 26, 2015, the Court stayed all pending scheduling deadlines, including that for fact discovery, for ninety (90) days. ECF No. 116.

 **B.** **The Settlement Agreement**

 After arm's-length negotiations, Plaintiff and Defendants agreed to resolve the Settlement Class's claims against Defendants. Pursuant to the Settlement, Defendants will pay $2.2 million in cash into a Settlement Fund on or before January 4, 2016. *See* Settlement Agt., Ex. A, Def. (v), ¶ 12. The Settlement Class members eligible for payment are those who purchased Bulk Bleach in North Carolina and South Carolina directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures, from March 19, 2010 to March 31, 2013 (except for those class members who had previously entered into settlements with Defendants). *Id.* at Def. (w). As required by Fed. R. Civ. P. 23(c)(2)(B), the Settlement provides the opportunity for any Settlement Class Member to opt-out and not be bound by the Settlement. *Id*. at ¶ 5.

 The total value of this Settlement represents nearly all of what Plaintiff believes to be the estimated single damages owed to the Settlement Class. Plaintiff estimates this amount after having conducted a thorough review of Defendants' transactional data from the Class Period, deriving an estimate of the overcharge calculation from an analysis of prices before, during, and after the alleged conspiracy period, and determining estimated overall class damages by multiplying Defendants' overall sales during the alleged conspiracy period by the overcharge.[3]

 Pursuant to the specific language of the Settlement Agreement, it releases Defendants from all claims relating to the pricing, selling, discounting, marketing, manufacturing, or

---

[3] Any attorneys' fees or expenses must be approved by the Court. Plaintiff will submit a motion for attorneys' fees and expenses no later than thirty (30) calendar days before the Final Approval Hearing, and Settlement Class members will have an opportunity to comment on or object to the request at the Fairness Hearing.

distributing of Bulk Bleach in North Carolina and South Carolina relating in any way to any conduct by Defendants as alleged in the Complaint. *Id.* ¶¶ 9-11.

## III.    ARGUMENT

### A.    The Proposed Settlement Falls Within the Range of Possible Approval as Fair, Reasonable, and Adequate.

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910); *see also Poole Foundry & Machine Co. v. NLRB*, 192 F.2d 740, 745 (4th Cir. 1951) ("From time immemorial it has been the policy of the courts to favor settlement . . . ."). "There is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Case v. Plantation Title Co.*, No. 9:12-CV-2518-DCN-BM, 2015 U.S. Dist. LEXIS 33580, at *22 (D.S.C. Mar. 5, 2015) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).[4]

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements. *See* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.25 (4th ed. 2005).  District courts have substantial discretion in deciding to preliminarily approve a class action settlement.

_____

[4] *See also Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185-86 (4th Cir. 1993) (acknowledging desirability of settlement in class action context); *South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement' . . . of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.") (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980)); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (stating there is a "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (reasoning that "the law favors settlement, particularly in class actions"); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (stating the strong judicial policy in favor of settlements).

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Clark v. Experian Info. Solutions, Inc.*, No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324, at *22-23 (D.S.C. Jan. 14, 2004).

At this phase in the class action settlement process, the Court's function is simply to determine "whether there is 'probable cause' to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) The question before the Court is therefore limited to whether the proposed settlement falls "within the range of possible approval." *Id.* For preliminary approval, a settlement "need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (citation omitted). Preliminary approval should be granted when the proposed settlement is fair and adequate. *Jiffy Lube*, 927 F.2d at 158. Plaintiff respectfully submits that the Settlement easily meets this standard. A preliminary examination of the criteria for final approval supports this conclusion.[5]

### 1.    The Proposed Settlement is Fair.

The "focus of the fairness inquiry is to . . . make sure that the settlement was the result of good faith bargaining at arms-length." *Anselmo v. West Paces Hotel Group, LLC*, No. 9:09-cv-2466-DCN, 2012 U.S. Dist. LEXIS 164618, at *7 (D.S.C. Nov. 19, 2012) (citation omitted). Relevant factors include "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [complex] class action litigation." *Jiffy Lube*, 927 F.2d at 159. "Although the district court has broad discretion in approving a settlement of a class

---

[5] After the Fairness Hearing, the Court has the discretion under Rule 23(e) to finally approve the Settlement if the Court finds it to be fair, adequate, and reasonable to the Class. Plaintiff will request that the Court approve the proposed plan for allocation of the Settlement Fund at the Fairness Hearing.

action case, there is a 'strong presumption in favor of finding a settlement fair.'" *Faile v. Lancaster County*, No. 0:10-cv-2809-CMC, 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) (citation omitted).

The proposed settlement was the result of several weeks' arm's-length negotiations by counsel with decades of collective experience in complex antitrust class actions. Plaintiff and Defendants chose to settle only after Plaintiff had undertaken significant pre-filing investigation and after Plaintiff had prevailed against Defendants on the Motions to Dismiss. Moreover, by the time of the Settlement, Plaintiff developed targeted search queries based on its investigative efforts to determine the most important documents in Defendants' productions and then analyzed those documents. Plaintiff also had analyzed documents produced by Defendants and Olin Corporation to the FTC, including the deposition testimony of several critical witnesses in the FTC proceedings. Using the transactional data produced by the Defendants, Plaintiff also undertook the analysis of the Settlement Class's damages described above. Armed with this information, there can be no question that, at the time the Settlement was reached, Plaintiff and Counsel had a clear view of the strengths and weaknesses of the Class's claims. *See cf. In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR, 2010 U.S. Dist. LEXIS 68619, at *6 (E.D.N.C. June 11, 2010) (recognizing that the Fourth Circuit views discovery as beneficial to allowing parties to make informed decisions regarding settlement).

Finally, Plaintiff's counsel – law firms possessing substantial antitrust and class action experience – believe that this Settlement is fair, reasonable, and adequate in light of the circumstances of this case. Counsel base this belief on their deep familiarity with the factual and legal issues of this case and the risks associated with continued litigation. The opinions rendered by experienced counsel should be given weight in evaluating the fairness of the proposed

settlement. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975) (citing cases); *Kirven v. Cent. States Health & Life Co.*, No. 3:11-2149-MBS, 2015 U.S. Dist. LEXIS 36393, at *14 (D.S.C. Mar. 23, 2015).

### 2.    The Proposed Settlement is Reasonable and Adequate.

Adequacy "focuses on whether the consideration provided to the [absent] class members is sufficient." *Red Hat*, 2010 U.S. Dist. LEXIS 68619, at *4. Relevant factors include (1) the strength of the plaintiff's case on the merits, (2) difficulties of proof or strong defense the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) whether the defendant is solvent, and (5) the degree of any opposition to the proposed settlement. *Jiffy Lube*, 927 F.2d at 159.

The settlement's reasonableness and adequacy is most clearly demonstrated by the fact that it satisfies nearly all of the estimated single damages owed to the Class as a result of Defendants' alleged conduct.[6] Such an excellent recovery in terms of the percentage of single damages well exceeds the range of approved recoveries within and outside the Fourth Circuit. *See, e.g., Flinn*, 528 F.2d at 1173-74 (explaining that even settlements constituting a mere "fraction of the potential recovery" had been upheld as fair and reasonable); *Horton*, 855 F. Supp. at 833 (preliminarily approving settlement that constituted only five percent of plaintiffs' estimated losses).[7]

---

[6]  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts which have approved settlements in this type of [private antitrust class action] case . . . have given their approval to settlements which are traditionally based on an estimate of single damages only.")

[7]  *See also, Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 325 (3d Cir. 2011) (noting that the class's expert estimated that the plaintiffs' settlement fund represented an estimated 10.9% to approximately 20% of plaintiffs' single damages and finding no abuse of discretion in "the District Court's conclusion that the proposed settlement offered a reasonable recovery"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538-539 (3d Cir. 2004) (stating that, according

The other factors also support preliminary approval of the Settlement. Since courts judge the adequacy of a settlement in light of the possible single damages, Plaintiff has achieved nearly everything it could. While Plaintiff is confident in the strength of its case, continued litigation certainly poses risks: Defendants have made clear they would vigorously contest the legal and factual bases for Plaintiff's claims. Moreover, Plaintiff still faces class certification, summary judgment, potential *Daubert* motions, trial, and likely appeals of a successful trial verdict. Even if Plaintiff were to win at every subsequent stage, continued litigation would necessarily delay recovery to the Class. These risks cannot be justified where the only marginal benefit would be nominal in light of the substantial recovery provided by the Settlement.

Because the proposed Settlement is within the range of possible approval, and is fair, reasonable and adequate, the Court should preliminarily approve the proposed Settlement.

**B.    The Court Should Conditionally Certify the Settlement Class.**

The Court must determine whether the Class should be certified for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a

---

to plaintiffs' expert's figures, "the $44.5 million settlement fund is approximately 33% of available damages and well within a reasonable settlement range when compared with recovery percentages in other class actions") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (approving settlement providing 36% - 37% recovery and noting typical recoveries in securities class actions range from 1.6% to 14%)); *In re Remeron End-Payor Antitrust Litig.*, Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011, at *69-70 (D.N.J. Sept. 13, 2005) ("In order to evaluate the propriety of an antitrust class action settlement's monetary component, a court should compare the settlement recovery to the estimated single damages. . . . [A]n antitrust class action settlement may be approved even if the settlement amounts to a small percentage of the single damages sought, if the settlement is reasonable relative to other factors, such as the risk of no recovery."); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (preliminarily approving settlement representing approximately eight percent of the maximum recoverable class damages); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-84 (S.D.N.Y. 2009) ("[T]he Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate."); *In re First Databank Antitrust Litig.*, 205 F.R.D. 408, 411 (D.D.C. 2002) (recognizing "the appropriateness of approving class settlements involving recoveries for far less than the whole of estimated single damages suffered.").

settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14. However, in assessing those class-certification requirements, a court may properly consider that there will be no trial. *Id.* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). There is no doubt, however, that "a potential settlement is a relevant consideration when considering class certification." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-271-JFA, 2012 U.S. Dist. LEXIS 131201, at *2 (D.S.C. 2012); *see also Amchem*, 521 U.S. at 619-20 ("Settlement is relevant to a class certification."). Courts apply Rule 23 liberally and flexibly to promote judicial economy and the ends of justice. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003); *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004).

Plaintiff seeks certification of a Settlement Class consisting of:

> All persons that purchased Bulk Bleach in North Carolina or South Carolina directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures, from March 19, 2010 through March 31, 2013.[8]

Settlement Agt., Ex. A, at ¶ 1. Excluded from the Settlement Class are Defendants and any purchaser of Bulk Bleach who previously entered into a settlement with Defendants as specifically identified in the Settlement Agreement. *Id.* This class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### 1.    The Requirements of Rule 23(a) Are Satisfied.

#### a.    Numerosity

---

[8] The Settlement Class definition differs slightly from the class definition in the Complaint, which confines the damages period to the entry into force of the Defendants' agreements at issue in this litigation and their termination as a result of the Consent Decree Defendants reached with the FTC.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 255 (M.D.N.C. 2007) (explaining that "impracticable" does not mean impossible). The Fourth Circuit has upheld classes consisting of as few as eighteen members. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *see id.* ("No specified number is needed to maintain a class action under Fed. R. Civ. P. 23."). While there is no magic number, "generally, courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998); *see also In re Kirschner Med. Corp. Sec. Litig.* ("*In re Kirschner*"), 139 F.R.D. 74, 78 (D. Md. 1991) (observing that a "class of as few as 25 to 30 members raises the presumption that joinder would be impracticable").

Plaintiff estimates that the Settlement Class includes approximately 42 purchasers of bulk bleach in North Carolina and South Carolina. Joining all of them would be impracticable, and Rule 23(a)(1) is therefore satisfied.

### b.    Commonality

Commonality requires only that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A proposed class will satisfy the . . . commonality requirement if there is at least one question of law or fact common to the class." *Fischer v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 211 (E.D. Va. 2003); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (claims need only invoke common questions of law or fact). Even "differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997)).

10

Plaintiff's Complaint alleges Defendants engaged in a continuing agreement to allocate the market for bulk bleach in North Carolina and South Carolina, and that, as a result of Defendants' conduct, Plaintiff and the other class members purchased bulk bleach from Defendants at supra-competitive prices. Compl. ¶¶ 68-71. Every Settlement Class member was, therefore, subjected to the same allegedly unlawful conduct as every other Settlement Class member. Among the questions of law and fact common to the Class are:

- whether Defendants Oltrin and JCI conspired or otherwise entered into an agreement with the purpose and effect of allocating markets in order to unlawfully raise or stabilize the price of bulk bleach and restrain trade or commerce;

- whether Defendants' conduct violated Section 1 of the Sherman Act;

- whether Defendants' conduct violated Section 2 of the Sherman Act;

- the existence, duration, and illegality of the contract, combination or conspiracy alleged in the Complaint;

- the effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages; and

- whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

Because the claims of all members of the Settlement Class share a common core of facts and common legal issues, Rule 23(a)(2) is satisfied.

### c.     Typicality

Typicality requires that a class representative's claims be typical of class members' claims. Fed. R. Civ. P. 23(a)(3). "Where the commonality requirement focuses on the claims of the class as a whole, the typicality requirement is focused on the claims of the named plaintiffs." *Fisher*, 217 F.R.D. at 212. The typicality requirement is satisfied where, as here, the class representative's claims arise from the same events or course of conduct and are premised on the same legal theories as the claims of class members. *Id.* Further, when the same unlawful conduct

11

was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met irrespective of minor variations in the fact patterns underlying individual claims. *See South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991) (typicality satisfied where plaintiffs' purchases arose out of defendants' common course of conduct); *Meredith v. Mid-Atlantic Coca-Cola Bottling Co., Inc.*, 129 F.R.D. 130, 133 (E.D. Va. 1989) (typicality satisfied where "[p]laintiffs and the members of the proposed classes . . . were all allegedly harmed by the same conduct of Defendants").

Plaintiff's claims arise out of the same conduct as the Settlement Class members' claims: Defendants' sale of bulk bleach in North Carolina and South Carolina during the Class period at supracompetitive prices. Plaintiff's claims are based on the same alleged theories and will require the same types of evidence to prove those theories. Thus, Rule 23(a)(3) is satisfied.

### d.    Adequacy

Adequacy requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement, class representatives must possess the same interest and suffer the same injury as the class members. *Broussard v. Meinecke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). The requirement is satisfied if: (1) the named plaintiff has interests common with, and not antagonistic to, the class's interests; and (2) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va. 2006); *In re Se. Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606-07 (W.D.N.C. 1993). The interests of the class representative here do not conflict with the interests of the class.

First, Plaintiff possesses "the same interest and [has] suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 625-26 (quotations omitted), and has no interests antagonistic to those of the Class. Specifically, Plaintiff and the absent class members have

suffered an overcharge in their purchases of Bulk Bleach, suffered the same injury, and have precisely the same interest in proving that Defendant violated the Sherman Act to achieve the maximum recovery possible. *See Se. Hotel*, 151 F.R.D. at 607 ("The named plaintiffs should adequately represent the claims of the class since those claims are also their own.").

Further, Plaintiff understands its duties as proposed representative of the Settlement Class, and it has taken them seriously throughout this litigation. Indeed, Plaintiff has actively participated in the litigation. It provided factual information and reviewed the draft complaint before filing; implemented a litigation hold that included purchasing software to ensure preservation of its electronically stored information, participated in discovery by producing documents and preparing responses to interrogatories; and was involved in the settlement negotiations and reasons therefor.

Second, Plaintiff is represented by well-qualified attorneys acting as Class Counsel. These firms are Cera LLP and Cohen Milstein Sellers & Toll PLLC. Additional counsel for Plaintiff and the Settlement Class include the McNair Law Firm, P.A. and Gustafson Gluek PLLC. Plaintiff and the Settlement Class benefit from these firms' substantial experience in prosecuting large and complex antitrust class actions and considerable resources.[9] Plaintiff's attorneys have vigorously litigated this case and they have and will continue to diligently represent the interests of the Settlement Class throughout the claims process. Accordingly, the

---

[9] Cera LLP and its predecessors has been representing plaintiffs in complex class action litigation for more than fifty years and has recovered more than $2 billion on behalf of its clients. For forty years, Cohen Milstein has been one of the nation's leading plaintiffs' class action firms; during that time, it has litigated some of the nation's most complicated class cases in the field of antitrust, and it has recovered billions of dollars of damages for injured plaintiffs. Similarly, Gustafson Gluek has represented plaintiffs in complex antitrust class action litigation since its founding in 2003 and achieved hundreds of millions in relief for them. Formed in 1970, the McNair Law Firm's litigation lawyers have extensive trial experience in federal and state courts in North Carolina and South Carolina representing businesses including quasi-public entities such as the Plaintiff.

requirements of Rule 23(a)(4) are satisfied. For the same reasons, Plaintiff's counsel meet the requirements for appointment as Settlement Class Counsel under Rule 23(g).

### 2.    The Requirements of Rule 23(b)(3) Are Satisfied.

Once Rule 23(a)'s four requirements are met, Plaintiff must also show that the proposed Settlement Class satisfies Rule 23(b)(3). Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods to fairly and efficiently adjudicate the matter. This inquiry focuses on the "legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* In determining whether the predominance standard is met, courts focus on the issue of liability, and "if the liability issue is common to the class, common questions are held to predominate over individual ones." *BearingPoint*, 232 F.R.D. at 542 (quoting *Kirschner*, 139 F.R.D. at 80). Damages are less central to the predominance requirement, and differences in damages among class members do not defeat a finding of predominance when liability is a common, class-wide issue. *Id.*

As set forth above, Plaintiff maintains that the core facts and legal issues pertaining to the claims in this case are common to all Settlement Class members. The elements of Plaintiff's claims focus exclusively on Defendants' allegedly wrongful conduct: Defendants' conspiracy and agreements entered with the purpose and effect of allocating markets to unlawfully raise or stabilize the price of bulk bleach and restrain trade or commerce; whether Defendants' violated the Sherman Act by committing such conduct; and the effect upon and the extent of injuries

sustained by Plaintiff and members of the Class and the appropriate damages resulting therefrom. None of these elements involve issues that vary by Settlement Class member.

A class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class treatment is clearly superior in this case to any other method for the fair and efficient adjudication of the controversy.

A class action is the most practicable method to resolve disputes where the burden of bringing a complex suit would be higher than any individual class member's potential recovery. *See BearingPoint*, 232 F.R.D. at 544 ("Any interest individual members of the class may have in controlling the litigation is far outweighed by the benefit of distributing the financial burden of the litigation among the class"); *Kirschner*, 139 F.R.D. at 80. Plaintiff alleges Defendants charged supracompetitive prices to all of their customers during the relevant period; settling these claims in the context of a class action will conserve both judicial and private resources and will hasten class members' recovery. *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 249 (E.D.N.Y. 1998) (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources"). The potential for dozens of cases to be filed in North Carolina and South Carolina would place a strain on judicial resources which would likely be localized in this forum.

A class action is the superior method of adjudication here, and the claims involve complex issues that would make it economically unfeasible for Class members to pursue claims individually. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quotation omitted). Individual Class members would be required to invest substantial sums to litigate their claims against a

sophisticated set of Defendants with significant resources and highly competent counsel who have demonstrated their intent to spare no expense and put an all-out defense to the claims in this matter.

Accordingly, for purposes of settlement, the proposed class action is superior to other available methods for the fair and efficient adjudication of Defendants' anticompetitive conduct.

### C.    Plaintiff's Proposed Class Notice Plan is Reasonable.

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. The notice program must provide "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974)).

The proposed direct notice program is the best that can be achieved in class actions because Class Counsel, with the assistance and information provided by Defendants, can identify and directly contact all Settlement Class Members. As detailed in the Proposed Order for Notice and Hearing, the proposed notice program includes direct mail and electronic mail notice to all members of the Settlement Class. Defendants' documents identify the addresses, telephone numbers, and other contact information for all Class members, and Defendants' transactional data lists each purchase by customer during the Settlement Class Period. Specifically, Counsel propose to mail copies of the Notice of (i) Pendency and Proposed Settlement of Class Action; (ii) Settlement Fairness Hearing; and (iii) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice," Ex. B) and the Proof of Claim (Ex. C) and Release form by first class mail directly to all persons and entities identified from Defendants' transactional data.

16

The notice program is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and with principles of due process. *See* Ex. B. The Notice also contains all the information required under Ruler 23(c)(2)(B) and fulfills the requirements of due process because the proposed Notice alerts and informs those members of the Class who can be identified through reasonable efforts of the information set forth above. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified); *Manual for Complex Litigation*, § 21.311, at 292 (4th ed. 2004) ("When names and addresses of most class members are known, notice by mail usually is preferred.").[10]

The proposed notice plan meets the requirements of due process, and Plaintiff respectfully requests it be approved by this Court.

### D. Proposed Settlement Schedule

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this action as a class action; and (ii) direct notice of the proposed settlement to all members of the Class. As such, the Preliminary Approval Order sets a proposed schedule for mailing of the Notice and deadlines for submitting claims and/or objecting to the proposed settlement or opting out of the Class, as well as of for the final Fairness Hearing.

---

[10] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n.22 (1978) (speaking favorably of the use of mail for class notice, without specifying the class of mail); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (finding that form and distribution of notice was adequate where it complied with criteria described above); *Ashley v. GAF Materials Corp. (In re Bldg. Materials Corp. of America Asphalt Roofing Shingle Prod. Liab. Litig.)*, MDL No. 8:11-mn-2000-JMC, 2014 U.S. Dist. LEXIS 183679, at *29 (D.S.C. Oct. 15, 2014) (stating that direct-mail notice was required where names and addresses of known or potential class members are reasonably available).

Plaintiff recommends the schedule set forth below.  The Parties agree to the schedule for the other dates, as provided for in the proposed Preliminary Approval Order.

| | |
|---|---|
| Notice of Proposed Settlement and Copy of Proof of Claim Mailed to Class Members (Preliminary Approval Order ("PAO"), ¶6(a)) | No later than 10 business days after entry of the order preliminarily approving the settlement |
| Final Approval Hearing | 60-90 days after Notice issues, on a date consistent with the Court's calendar |
| Deadline for Plaintiff to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (PAO, ¶16) | No later than 30 calendar days before the Final Approval Hearing |
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiff Award (PAO, ¶8(c)) | No later than 15 calendar days before the Final Approval Hearing |
| Deadline for requesting exclusion from the Settlement (PAO, ¶7(a)) | No later than 15 calendar days before the Final Approval Hearing |
| Deadline to file reply brief, if necessary (PAO, ¶17) | No later than 7 calendar days before the Final Approval Hearing |
| Deadline for submitting Proof of Claim forms (PAO, ¶20) | Postmarked no later than 60 calendar days after the Notice |

## IV.   <u>CONCLUSION</u>

Based upon the foregoing arguments, as well as the record in this litigation, Plaintiff respectfully requests that the Court enter an Order preliminarily approving the Settlement Agreement, conditionally certifying the Settlement Class, appointing Plaintiff the representative of the Settlement Class, appointing Solomon B. Cera of Cera LLP and Brent W. Johnson of Cohen Milstein Sellers & Toll as Class Counsel, and approving the proposed notice plan.

November 23, 2015                              Respectfully submitted,


 /s/ Henrietta U. Golding
Henrietta U. Golding, Fed ID# 2125
**McNair Law Firm, P.A.**
2411 N. Oak Street, Suite 206 (29577)
Post Office Box 336
Myrtle Beach, SC 29578-0336
Tel: (843) 444-1107
hgolding@mcnair.net

Solomon B. Cera
Pamela A. Markert
**Cera LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Tel: (415) 977-2230
scera@cerallp.com
pmarkert@cerallp.com

Brent W. Johnson
Emmy L. Levens
Hiba Hafiz
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
bjohnson@cohenmilstein.com
elevens@cohenmilstein.com
hhafiz@cohenmilstein.com

Daniel E. Gustafson
Daniel C. Hedlund
**Gustafson Gluek, PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

*Attorneys for Plaintiff Grand Strand Water*
*Authority and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2015, I electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND AUTHORIZATION OF DISSEMINATION OF NOTICE** with the Clerk of the Court using the ECF, who in turn sent notice to Counsel of Record.


Dated:    November 23, 2015              /s/ Henrietta U. Golding
                                         Henrietta U. Golding

20